**Malinda FRANKLIN, Charles Franklin and Jeffrey Howell, Appellants,**

v.

**SAFE AUTO INSURANCE COMPANY, Appellee.**

and

**Nationwide Property and Casualty Insurance Company, Appellant,**

v.

**Safe Auto Insurance Company and Charles Franklin, Appellees.**

Nos. 2008–CA–000615–MR, 2008–CA–000699–MR.

Court of Appeals of Kentucky.

May 1, 2009.

John M. Doyle, Louisville, KY, for appellants Malinda Franklin, Charles Franklin and Jeffrey Howell.

Robert E. Barnett, Louisville, KY, for appellant Nationwide Property and Casualty Insurance Company.

David W. Zahniser, Cincinnati, OH, for appellee.

Before DIXON, KELLER, and WINE, Judges.

## OPINION

WINE, Judge.

Malinda and Charles Franklin ("the Franklins") and Nationwide Property and Casualty Insurance Company ("Nationwide") appeal from a summary judgment in favor of Safe Auto Insurance Company ("Safe Auto"). The trial court found that the Franklins were not the owners of a vehicle at the time it was involved in an accident, and therefore it was not a covered vehicle under the Franklins' policy with Safe Auto. We agree with the Franklins and Nationwide that title to the vehicle passed to the Franklins when the seller

delivered the completed certificate of title to them. Consequently, we find that they were the owners of the vehicle for purposes of insurance coverage and were entitled to summary judgment on this issue.

The relevant facts of this action are not in dispute. In 2003, the Franklins secured a policy of motor vehicle insurance from Safe Auto. The policy period covered October 26, 2003 to April 26, 2004. Charles was listed as an additional driver under the policy. Their two vehicles, a 2001 Ford Taurus and a 1986 Buick Regal, were listed as covered vehicles under the policy. In addition, the policy provided coverage for thirty days after they became the owners of any additional vehicle.

On February 3, 2004, Charles purchased a 1984 Dodge RAM pickup truck from Shawn Nadeau ("Nadeau"). Charles paid Nadeau $2000.00 for the truck. The following day, on February 4, 2004, Charles and Nadeau signed and executed the Transfer of Title by Owner Section of the certificate of title for the truck. Their signatures were both notarized at that time. Charles then took possession of both the truck and the certificate of title.

However, when Charles and Nadeau went to the county clerk's office to file the transferred title, they discovered that there was still a lien on the vehicle. As a result, the title transfer could not be completed at that time. Nadeau went to the lien holder the following day and paid off the lien.

The next day, February 6, 2004, Charles was involved in an accident in the truck. Charles was driving northbound on Greenbelt Highway in Jefferson County. Jeffrey Howell ("Howell") was sitting in the passenger seat. As the truck approached the intersection of Greenbelt Highway and Lower Hunters Trace, a vehicle driven by Larry Easterly, Jr. ("Easterly")[1] turned left in front of the truck. Both Charles and Howell were injured as a result of the collision. In addition, the pickup truck sustained damage in excess of its value, rendering it a total loss. Since the truck had been totaled, Charles did not file the registration paperwork for it.

After the accident, Charles and Howell both applied to Safe Auto for basic reparation benefits ("BRB"). Safe Auto denied the claims. Thereafter, Howell applied for BRB through the Kentucky Assigned Claims Plan pursuant to Kentucky Revised Statutes ("KRS") 304.39–160(1). The Assigned Claims Bureau assigned the claim to Nationwide. Nationwide then elected to pursue its claim against Safe Auto, or in the alternative, against Charles.

On May 19, 2004, Safe Auto filed a declaratory judgment action against the Franklins and Jeffrey Howell. It sought a declaration that Charles did not own the Ford pickup truck on February 6, 2004, and therefore, it was not a covered auto under the policy. Nationwide filed an intervening complaint against Safe Auto and Charles, seeking to recover the BRB which it paid to Howell. In a separate action filed on October 15, 2004, Charles and Howell filed suit against Safe Auto and Easterly. The two complaints were later consolidated into this action.

Easterly failed to respond to the complaint, and the trial court entered a default judgment against him. Following a period of discovery, the matter was submitted to the court on cross-motions for summary judgment. After considering the arguments of counsel, the trial court granted Safe Auto's motion for summary judgment. The court found that Nadeau was the rec-

---

1. The briefs and pleadings spell Larry Easterly's surname several different ways. In the interest of consistency, we will refer to him as "Easterly."

ord owner of the truck as of the date of the accident, and therefore, the truck was not a covered vehicle under the Safe Auto policy. The Franklins and Howell appeal from this judgment, and Nationwide filed a separate notice of appeal. These appeals are now consolidated before this Court.

■ The central issue in this appeal concerns who was the owner of the truck for purposes of insurance coverage under the Motor Vehicle Reparations Act ("MVRA") and the Safe Auto policy. KRS 186.010(7)(a) defines "owner" to mean:

a person who holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest.

Similarly, the Safe Auto policy defines a "covered vehicle" as follows:

Covered vehicle means:

1. any vehicle shown on the declarations page;

2. any additional vehicle on the date you become the owner if:

    a. you acquire the vehicle during the policy period shown on the declarations page;

    b. we insure all vehicles owned by you; and

    c. no other insurance policy provides coverage for that vehicle.

The Safe Auto policy further defines "owner" to mean:

"Owner" means any person who, with respect to a vehicle:

1. holds legal title to the vehicle;

2. has legal possession of the vehicle that is subject to a written security agreement with an original term of six (6) months or more; or

3. has legal possession of the vehicle that is leased to that person under a written agreement for a period of six (6) months or more.

The parties agree that the interpretation of these sections are governed by the holdings in *Nantz v. Lexington Lincoln Mercury Subaru,* 947 S.W.2d 36 (Ky.1997), and *Omni Insurance Company v. Kentucky Farm Bureau Mutual Insurance Co.,* 999 S.W.2d 724 (Ky.App.1999). In *Nantz, supra,* the dealer provided all the legal documents necessary for the purchaser to obtain title. The purchaser failed to file those documents with the county court clerk's office and also failed to obtain automobile liability insurance. After the purchaser was involved in an accident, the victims of that accident sued the dealer alleging that title had not passed and that the dealer was responsible for insurance coverage for the accident. The Kentucky Supreme Court held that title passes to the purchaser when the dealer completes and signs the assignment of title section on the certificate of title, signs the odometer statement, and delivers the completed title to the purchaser. *Id.* at 38.

*Nantz* dealt with a transfer of title between a commercial dealer and an individual buyer. In *Omni Insurance Company v. Kentucky Farm Bureau Mutual Insurance Co., supra,* this Court addressed when title transfers between an individual seller and an individual buyer. In *Omni,* a father purchased an automobile for his nineteen-year old son, who was in the military. The father and the seller completed the vehicle transaction record and assignment portions of the certificate of title and then filed the documents with the clerk. The father also contacted his insurance company to add the vehicle to an existing policy with his insurer, Kentucky Farm Bureau.

Shortly thereafter, the father gave the son possession of the vehicle. They completed and executed a vehicle transaction

record, but they could not complete the assignment and warranty of title section on the reverse side of the certificate of title as the father had not yet received a certificate of title from the Kentucky Transportation Cabinet. Because they could not complete and file all the necessary papers to transfer title on that visit, the father gave his son a proof of insurance card from Farm Bureau and a note which stated that the son had his permission to drive the automobile. When the father received the certificate of title, he mailed it to his son. The son promptly signed the certificate of title and then obtained his own policy of liability insurance from Omni.

But before the father received and executed the certificate of title, the son was involved in an automobile accident. The father immediately signed the certificate of title and filed the paperwork with the clerk. In contesting coverage, Omni argued that, since transfer of title of the automobile was not accomplished until after the accident, the father still owned the automobile at the time of the accident.

After considering the holding in *Nantz* and the language of KRS 186A.215(4), this Court agreed. This Court noted that under KRS 186A.215(4), it is the responsibility of the individual transferor and transferee to see that the transfer is accomplished. Furthermore, the Court pointed out that the assignment and warranty of title had not been notarized until after the accident. Thus, since the father had not completed or delivered the documents prior to the accident, he remained the owner of the vehicle for purposes of the MVRA. *Omni* at 726–27.

In this case, Charles and Nadeau had executed the transfer of title section on the certificate of title and had filled out an odometer statement. Thus, Charles and Nationwide argue that they completed all

necessary steps for transferring title of the truck to Charles. Safe Auto contends that filing of the certificate of title is necessary to transfer ownership. In addition, Safe Auto argues that Charles and Nadeau did not complete all necessary steps to transfer title because they had not completed the application for title or a vehicle transaction record (VTR) form.

The trial court focused on the fact that the record title was still in Nadeau's name at the time of the accident. We do not find this fact controlling. KRS 186A.215(1) requires the transferor to execute the assignment and warranty of title and odometer statement on the certificate of title. The transferor must then deliver the title to the transferee. At that point, the transferee has the duty to sign the title and complete the application for a certificate of title. KRS 186A.215(2). The certificate of title and the application shall then be delivered to the county clerk for filing. KRS 186A.215(3). But if it comes to the attention of the transferor that the transferee has not submitted the necessary paperwork to the county clerk within fifteen days, the transferor must submit an affidavit stating that he has transferred his interest in the vehicle. KRS 186A.215(4).

As pointed out in *Omni,* both the transferor and the transferee have the duty to ensure that the transfer is accomplished. However, KRS 186A.215(4) allows the parties a fifteen-day grace period after completion of the paperwork to file the certificate of title with the clerk. Thus, the statute clearly contemplates that there may be a delay between the execution of the transfer of title and the filing with the clerk.

█ Consequently, we conclude that filing of the paperwork is not a prerequisite to transfer of title between an individual seller and an individual buyer. Rather, title to a vehicle transfers upon seller's and buyer's completion of the transfer of title

and odometer statement on the certificate of title and delivery of the completed form to the buyer. In this case, the parties completed these sections and Nadeau delivered the completed title to Charles. Furthermore, Nadeau had obtained a release of the lien, removing any impediment to filing of the title.

We also disagree with Safe Auto that Charles and Nadeau failed to complete the necessary paperwork to complete the transfer of ownership. Completion of the VTR is only necessary "if the space provided therefor on the owner's certificate of title fails to meet the Kentucky requirements for lawful conveyance of title." KRS 186A.215(1). The certificate of title in this case was issued after February 2000, and thus met the statutory requirements without filing a separate VTR form. As noted above, KRS 186A.215(2) places the duty on the buyer, not the seller, to complete the application for a new certificate of title and registration.

Under the circumstances presented in this case, Nadeau and Charles completed all necessary tasks to effect the transfer of title to Charles prior to the accident. Therefore, Charles was the owner of the vehicle for purposes of the MVRA and coverage under the Safe Auto policy. As a result, the trial court erred in granting summary judgment to Safe Auto.

Nevertheless, Safe Auto maintains that Charles and Nationwide have failed to show that they were entitled to summary judgment in their favor. In response to Charles and Nationwide's motion for summary judgment, Safe Auto claimed that there were disputed issues of fact which would preclude their recovery even if Charles was the owner of the vehicle for insurance purposes. First, Safe Auto states that Charles failed to present definitive evidence that he purchased the vehicle from Nadeau. Although Safe Auto concedes that it accepted the sale for purposes of its summary judgment motion, Safe Auto alleges that there were irregularities in the transaction which cast doubt upon the legitimacy of the sale.

However, we find that the transfer was effective upon completion of the transfer of title and odometer statement on the certificate of title and delivery of the completed form to the buyer. These documents were properly notarized and Safe Auto does not present any evidence to challenge their legitimacy. Thus, any irregularities in the other documentation were not material to the motion.

Safe Auto also claims there were issues of fact regarding any other coverage for the accident under Easterly or Nadeau's policies. Similarly, Safe Auto asserts that Nationwide, Charles and Howell must still prove the amount of damages to which they are entitled. However, the only question before the trial court was whether the Franklins were "owners" of the truck for purposes of the MVRA and the Safe Auto policy. Since we have found that they were, Nationwide and the Franklins are entitled to judgment on that issue. Any additional dispute regarding the amount and apportionment of damages are outside of the scope of this appeal. Rather, these issues must be raised under the appropriate provisions of the MVRA. The trial court may take up those matters upon remand of this action, if appropriate.

Accordingly, the judgment of the Jefferson Circuit Court is reversed, and this matter is remanded for entry of a judgment in favor of Malinda and Charles Franklin and Nationwide on the issue of coverage and for further proceedings as necessary.

ALL CONCUR.